Patrick H. Horgan et al.
vs.
Robert M. Franklin, Assignee, et al.
} Eq. No. 2183.

April 10, 1930.

FROST, J. Heard on bill, answer and proof.

This is a bill of complaint brought by certain creditors of Arthur S. Koschny, of the City of Newport. On January 26, 1926, Koschny made an assignment of all his property to Robert M. Franklin, for the benefit of his creditors. In pursuance of his task of reducing the assets of the assignment to cash preparatory to a distribution among creditors, the assignee sold a certain interest in real estate situated on Thames Street in Newport, formerly belonging to Koschny, at public auction. The present bill is brought against Robert M. Franklin, assignee, and Julia Koschny, by whom the said interest in real estate was purchased at the auction sale, to the end that the conveyance to Julia Koschny may be declared invalid and that the assignee may be required to again sell the interest in the Thames Street property at public auction. The gist of the complaint is that the auctioneer failed to get as high a price for the property as might have been obtained and that the property was sold to Julia Koschny for $1,355 after a bid of $1,400 had been made by Patrick H. Horgan, one of the complainants herein.

In reaching a conclusion on the point at issue, it is necessary to consider various features of the auction sale; namely, the description of the property to be sold, the time involved in the sale, the size and number of the bids, the interests of the bidders, the amount of the final bids in relation to the value of the property, the evidence bearing on the time when the alleged bid of $1,400 was made.

The testimony taken at the hearing raises some question as to just what was offered for sale and whether the property was accurately described.

The will of Simon Koschny, the father of Arthur S. Koschny, introduced as an exhibit, would indicate that the property sold was an undivided one-sixth interest in the Thames Street property, subject to dower rights in the wife of Arthur S. Koschny. This interest, it would seem from the evidence, was also subject to a lease of a portion of the property, extending over a possible period of seven years. With what particularity this was described at the sale is not wholly clear, but, as it seems to the Court, this has little bearing on the question of whether the highest possible price was obtained since, whatever the description, the complainants testified that they were ready to pay considerably more than was obtained and it, therefore, matters little whether other possible bidders declined to bid on the ground that they did not know the extent of the interest sold. No lack of a proper description was responsible for the low price, as the complainants term it, for which the property was sold.

As to the time spent in selling the Thames Street property, it appears that the auction started at 12 o'clock M. and finished about 12:50 P. M. This was considerably more time than was required to sell the John Street property. The Court is unable to find that a period of 50 minutes spent in selling one parcel of real estate of itself, indicates in any way that the sale was hurried.

There were 41 bids in all, the first being for $500, made by Mr. Horgan, 15 bids in all being made by Mr. Levy. The latter testified that he made 4 bids with a $5 raise and 6 with a $10 raise. Toward the last of the bidding Mr. Brightman bid $1,350 and this bid was followed by Mr. Koschny's bid of $1,355. Mr. Horgan testified that after Mr. Koschny made the bid of $1,355. Mr. Green dwelt on the bid about 5 minutes, and Mr. Green, himself, said substantially the same thing. The time consumed in bidding, the number of bids, as well as the size of the increases in the bids themselves, all indicate that the sale was not hurried and that the opportunity was ample for anyone who desired to bid.

Of the bidders, all appear to have

been creditors of Arthur S. Koschny, with the possible exception of William Koschny, who was bidding for his mother, Julia Koschny, because she desired to keep the property in the family.

It appears that there was a conference in the law office of Mr. Levy on the day before the auction, which was attended by Mr. Fritz, Mr. Brightman, Mr. Horgan and possibly Mr. David, and that the object of the conference was to get as much as possible for creditors. Doubtless there was a desire to obtain all that could be gotten for creditors but the evidence would indicate that this desire did not overcome the natural and very human wish of each of the bidding creditors to get the property for himself at as low a price as possible. Otherwise, why did Mr. Horgan start the bidding at only $500 and why did the bidding price rise so slowly? ·

The property was sold for $1,355 and Mr. Horgan, who apparently is experienced in real estate values in Newport, testified that the interest sold was worth $3,000, but he started the bidding at only $500. It is common knowledge, however, that property very frequently does not bring at an auction sale what many consider its real value. This price, of itself, and under all the circumstances, does not indicate to the Court that the sale was unfair.

But the complainants aver that a bid of $1,400 was actually made prior to the time when the hammer fell.

Mr. Levy said that Mr. Horgan made a bid of $1,400 just before the auctioneer said "sold." Mr. McCafferty testified substantially the same. Mr. Brightman was less positive on this point, but said, "As I recall it, bid was made before hammer fell." Mr. Horgan, himself, however, was far from positive in his testimony. He testifield, "I think I said $1,400 before he said 'sold.' I think I got it in before he said 'sold.'" On the other hand Mr. Green, the auctioneer, testified

that after he said "sold," Mr. Horgan made his bid and he replied that it was too late. Mr. Franklin, the assignee, testified that he didn't remember hearing a bid of $1,400 from Mr. Horgan. Mr. James W. Barker, apparently a disinterested witness, was present at the auction sale. He testified that the bid hung at $1,355 for quite some time; that the auctioneer tried to create an interest, but it wasn't of much avail; that the property was struck off to Mr. Koschny and then he heard Mr. Horgan's bid. Upon all the evidence bearing on the time of Mr. Horgan's $1,400 bid, the Court cannot find that the preponderance is in favor of the complainants. It finds that the bid was made after the hammer fell.

When the hammer falls the sale is completed, assuming that the conditions of payment are later complied with. The auctioneer in the absence of fraud or mistake was not bound to reopen the bidding.

Upon all the evidence the Court thinks that the sale was conducted fairly and that there is no sufficient basis for declaring the conveyance to Julia Koschny invalid and for reselling the property.

The bill of complaint must be dismissed.

For complainants: Max Levy, Burdick, Corcoran & Peckham.

For respondents: Sheffield & Harvey, Robert M. Franklin, Frank F. Nolan.